**NORTHERN OHIO SEWER CONTRACTORS, INC., Appellee,**

v.

**BRADLEY DEVELOPMENT COMPANY, INC., et al., Appellants.**

[Cite as *N. Ohio Sewer Contrs., Inc. v. Bradley Dev. Co.*, 159 Ohio App.3d 794, 2005-Ohio-1014.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 84693.

Decided March 10, 2005.

Wegman, Hessler & Vanderburg, Jeffrey W. Krueger, and Lesley A. Weigand; and David W. Toetz, for appellee.

Phillips and Co., L.P.A., and Gerald W. Phillips, for appellants.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} The respondents/appellants, Bradley Development Company, Inc., and Village Builders, Ltd. (collectively, "Bradley"), challenge the decision of the trial court that confirmed an arbitration award in favor of the claimant/appellee, Northern Ohio Sewer Contractors, Inc. ("Northern"), regarding a construction-

contract dispute. After reviewing the record, the arguments of the parties, and the applicable law, we affirm the decision of the trial court.

{¶ 2} On March 23, 1999, Bradley and Northern entered into a contract entitled Sewer and Water Main Agreement, wherein Northern agreed to install storm sewers, sanitary sewers, and water mains for Bradley's Village Square Condominium project in Wellington, Ohio. The contract called for the sewers and water mains to be installed in strict compliance with engineering specifications that were revised several times. The contract contained a valid and binding arbitration clause.

{¶ 3} The village engineer, Poggemeyer Design Group, Inc., was concerned that the extra weight of vehicular traffic could break the sewer pipes. In order to comply with the mandates of the village engineer, Northern was required to upgrade the storm sewer from 30 to 36 inches. Northern also claims that Bradley requested additional premium fill outside the pavement areas of the contract. These upgrades were not contemplated in the original proposal. Northern was also required to relocate a fire hydrant.

{¶ 4} A dispute arose between Northern and Bradley regarding the final cost of the contract. Northern claims that the mandatory upgrade of the storm sewer, the addition of extra premium fill, and the relocation of a fire hydrant cost it an additional $51,400 above the already agreed-to contract price. Bradley refused to pay and argues that an agreement was previously reached with Northern regarding the sewer upgrade.

{¶ 5} Bradley contends that Northern stipulated that the total cost of the upgrade would be $27,470, an increase of only $5,226 from the price stated in the original contract. Bradley further claims that the sewer upgrade cost was due to the defective workmanship of Northern in failing to properly compact and backfill under the pavement areas referred to in the contract. Bradley also claims that Northern, by the express terms of the contract, was responsible for providing premium fill regardless of the sewer upgrade.

{¶ 6} On September 14, 2001, Northern filed a demand for arbitration with the American Arbitration Association in accordance with the contract's arbitration provision. Northern claimed that it had incurred $50,965.31 in expenses for the additional work and materials not contemplated in the original proposal with Bradley. On November 29, 2001, Bradley filed a counterclaim against Northern for $75,000, arguing that Northern had failed to perform on the contract, meet contract specifications, and exercise ordinary care in the performance of its work. Bradley argued that it had been forced to hire additional contractors in order to cure site damages caused by Northern and to fulfill Northern's contractual obligations.

{¶ 7} On March 7, 2002, an extensive arbitration hearing began that resulted in detailed awards for both Bradley and Northern. The arbitrator determined that the design engineer had increased the size of the storm sewer from 30 to 36 inches to include a larger drainage area. The design engineer had made the storm connections much too shallow, which forced the village engineer to require ductile iron storm laterals. The arbitrator awarded Northern $27,285 for premium fills for storm sewers, sanitary sewers, water mains, and laterals; $4,154 for pipe material; $7,571 for the replacement of a 30–inch sewer line; and $2,090 for an additional fire hydrant; and disallowed a claim of $1,105 for a flush-out valve. Northern was awarded a total of $41,400.

{¶ 8} The arbitrator then awarded Bradley a total of $2,560 on its counter-claims. Bradley received $460 for site cleanup costs, $1,100 for cement soil stabilization of subgrade, and $1,000 for additional premium fill that was required. The net arbitration award favored Northern and amounted to $38,540.

{¶ 9} The procedural history of this case is complex and strained. Originally, Northern filed an order to confirm the arbitration award with the Cuyahoga County Common Pleas Court on April 2, 2002. The case was subsequently transferred to the Lorain County Common Pleas Court, where Bradley filed a motion to vacate the arbitrator's award. After various issues were resolved in Lorain County, on March 19, 2004, the case was transferred back to Cuyahoga County, where Northern filed another motion to confirm the arbitrator's award and to consolidate cases. On April 20, 2004, the trial court granted Northern's motion confirming the arbitrator's award, while denying Bradley's motion to vacate.

{¶ 10} It is from that order that Bradley brings this appeal, alleging eight assignments of error for review.[1]

## Standard of Review

{¶ 11} Ohio public policy encourages the resolution of disputes through arbitration. *Kelm v. Kelm* (1993), 68 Ohio St.3d 26, 27, 623 N.E.2d 39.

{¶ 12} It is well settled that judicial review of arbitration awards is narrowly circumscribed by R.C. 2711.10 and 2711.11. *Huber Hts. v. Fraternal Order of Police* (1991), 73 Ohio App.3d 68, 596 N.E.2d 571; *Goodyear v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703, paragraph two of the syllabus. A common pleas court is limited to ascertaining whether fraud, corruption, misconduct, arbitration impropriety, or evident mistake made the award unjust or unconscionable. *Russo v. Chittick* (1988), 48 Ohio

---

1. Appellant's eight assignments of error are included in the appendix to this opinion.

App.3d 101, 548 N.E.2d 314. The trial court has the power to vacate an arbitration award only upon certain enumerated grounds.

{¶ 13} R.C. 2711.10 provides that the trial court may vacate an arbitrator's award if (A) the award was procured by corruption, fraud, or undue means; (B) there is evident partiality or corruption on the part of the arbitrators, or any of them; (C) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced; or (D) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

{¶ 14} Under R.C. 2711.10, an error of fact or law by an arbitrator does not provide a basis for vacating an arbitration award. *Goodyear*, 42 Ohio St.2d at 522, 71 O.O.2d 509, 330 N.E.2d 703; see, also, *Marra Constructors, Inc. v. Cleveland Metroparks Sys.* (1993), 82 Ohio App.3d 557, 612 N.E.2d 806. Nor will an ambiguity in an arbitration award that permits the inference that the arbitrator may have exceeded his authority provide a sufficient basis for vacating the award, so long as the award draws its essence from the parties' agreement. *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Employees Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 179, 572 N.E.2d 71.

{¶ 15} If the parties could challenge an arbitration decision on the ground that the arbitrators erroneously decided legal or factual issues, no arbitration would be binding. *Ungar v. Ormsbee* (Feb. 11, 2002), Stark App. No. 2001CA00210, 2002 WL 221973.

{¶ 16} The fact that a trial court might arrive at a different conclusion from the arbitrator is also immaterial. *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 647 N.E.2d 844; *Hillsboro v. Fraternal Order of Police* (1990), 52 Ohio St.3d 174, 556 N.E.2d 1186. The trial court is bound by an arbitrator's factual findings and serves only as a mechanism to enforce the arbitrator's award. *Warren Edn. Assn. v. Warren City Bd. of Edn.* (1985), 18 Ohio St.3d 170, 18 OBR 225, 480 N.E.2d 456.

{¶ 17} Appellate review of arbitration proceedings is confined to an evaluation of the order issued by the trial court, pursuant to R.C. 2711.10. The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of material mistake or extensive impropriety. *Lynch v. Halcomb* (1984) 16 Ohio App.3d 223, 16 OBR 238, 475 N.E.2d 181. A de novo review of the merits of the dispute is not within the contemplation of the statute. *Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors* (2000), 139 Ohio App.3d 772, 784, 745 N.E.2d 1069.

## Assignments of Error I and II

{¶ 18} In its first and second assignments of error, Bradley argues that the trial court erred by confirming the arbitrator's award despite the arbitrator's failure to comply with Bradley's "submission for the arbitration of award," which requested that the arbitrator issue a reasoned award with findings of fact and conclusions of law. Bradley further contends that the arbitrator failed to address issues and claims that it presented. Bradley claims that because of these omissions, the arbitrator's award should be vacated in accordance with R.C. 2711.10(C) and (D).

{¶ 19} Ohio law does not require an arbitrator to issue findings of fact or conclusions of law. The validity of an arbitration award is unaffected by the lack of written findings of fact and conclusions of law. *Ford Hull–Mar Nursing Home, Inc. v. Marr, Knapp, Crawfis & Assoc., Inc.* (2000), 138 Ohio App.3d 174, 179, 740 N.E.2d 729. An arbitrator need not file findings of fact, because the trial court is precluded by statute from examining any legal or factual merits of a decision rendered pursuant to binding arbitration in the absence of fraud or bad faith on the part of the arbitrator. *Creatore v. Robert W. Baird & Co.* (2003), 154 Ohio App.3d 316, 797 N.E.2d 127, citing *Ford Hull–Mar Nursing Home, Inc.*, 138 Ohio App.3d at 181–182, 740 N.E.2d 729.

{¶ 20} In the instant matter, the arbitrator issued a two-page award, stating: "The design engineer increased the size of the storm sewer from 30″ to 36″ to include a larger drainage area. The design engineer made the storm connections much too shallow, which forced the Village Engineer to require ductile iron storm laterals." The arbitrator issued detailed damage awards for both Bradley's and Northern's claims.

{¶ 21} Bradley contends that its request for findings of fact and conclusions of law was mandatory on the arbitrator because it was made in the "submission for the arbitration of award" and not objected to by Northern. Bradley also argues that the request for findings of fact and conclusions of law should have been honored because the request was made pursuant to Civ.R. 52.

{¶ 22} First, Civ.R. 52 specifically applies when questions of fact are tried by the court without a jury. Civ.R. 52 does not apply in cases of binding arbitration. *Bradley v. Tellom Leasing* (Aug. 26, 1996), Stark App. No. 1995CA00321, 1996 WL 488791.

{¶ 23} Next, the American Arbitration Association's ("AAA's") Construction Industry Arbitration and Mediation Rules, which governed the parties arbitration hearing, state:

{¶ 24} "(a) Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the *manner required by law*.

{¶ 25} "(b) The arbitrator shall provide a concise, written breakdown of the award. If requested in writing by *all parties prior to the appointment of the arbitrator*, or if the arbitrator believed it is appropriate to do so, the arbitrator shall provide a written explanation of the award." (Emphasis added.) AAA Rule 45(a) and (b).

{¶ 26} According to AAA Rules, *all parties* must request a written explanation of the award. The record indicates that only Bradley requested findings of fact and conclusions of law. However, even though not required to do so, the arbitrator still provided factual reasons for the award. The arbitrator also provided a detailed damage finding and signed the written award in compliance with AAA Rule 45. Furthermore, Northern's failure to object to Bradley's request for findings of fact and conclusions of law does not mean that Northern agreed with the request, nor does it impose a requirement on the arbitrator. After reviewing Ohio law and the AAA rules, we find that the form of the arbitrator's award was proper.

{¶ 27} Last, Bradley argues that the arbitrator's award should be vacated because the arbitrator did not specifically address all of its claims and defenses. Bradley claims that the following issues were not specifically addressed by the arbitrator: (1) the express terms of the contract stated that premium fills were included and a part of the contract specifications, and the contractor is not entitled to any additional payment for that work, (2) the express terms of the contract stated that all contract change orders must be in writing and agreed to by the parties, (3) the award conflicts with well-established legal principles that no quantum meruit recovery can be obtained absent an agreed written change order, and (4) accord and satisfaction occur, and estoppel applies, when a bona fide dispute exists and the contractor fails to object to the reduced amount of payment and accepts it.

{¶ 28} Bradley claims that there was "clearly misbehavior" by the arbitrator, who "clearly imperfectly executed his powers" by not specifically addressing these claims. However, contrary to Bradley's assertions, an arbitrator is not required under Ohio law to issue findings of fact and conclusions of law. Bradley does nothing more than merely assume that its claims were not addressed because the arbitrator did not mention them in his award.

{¶ 29} After finding that the arbitrator's award conformed with the AAA Rules, we must presume that the arbitrator addressed all of Bradley's claims, especially because he issued a detailed written award that denied and granted

claims against each party. Bradley's first and second assignments of error are hereby overruled.

## Assignments of Error III, IV, V, VI, VII

{¶ 30} In its third, fourth, fifth, sixth, and seventh assignments of error, Bradley claims that the trial court erred by confirming the arbitrator's award because the arbitrator "imperfectly executed his powers" and was "guilty of other misbehavior prejudicing its rights." Bradley attempts to frame its arguments using catch-phrase factors found in R.C. 2711.10(C) and (D). A closer examination of Bradley's arguments reveals that it merely seeks to challenge the merits of the arbitrator's legal analysis and underlying findings of fact.

{¶ 31} In these assignments of error, Bradley claims that the arbitrator misinterpreted the express terms of the contract, thereby creating a "manifest mistake" in finding that premium fills were additional and not included as part of the contract specifications for areas other than the pavement. Bradley also asserts that the arbitrator ignored the contract provision that stated that all change orders must be in writing and agreed to by the parties before work is performed. Bradley also challenges the arbitrator's legal conclusions by stating that quantum meruit recovery cannot be obtained absent a written change order and that the doctrine of accord and satisfaction governs, and estoppel applies, because Northern failed to object to a lesser payment that Bradley considered to be the final payment for the Village Square Condominium Project.

{¶ 32} Northern and Bradley have had a working relationship since 1989. The original contract for the Village Square Condominium Project was signed in March, yet plan revisions, upgrades, and changes continued into April. Northern's president, Gary Prock, testified that it was normal to have verbal change orders when doing a job for Bradley. He further testified that Bradley's representative, Rich Beran, asked him to take upgrades, such as the extra premium fill, off the original proposal price and bill them separately for bank purposes.

{¶ 33} Prock also testified that the additional premium fill within the right of way (outside the pavement) was offered to Beran as an option, an option Beran wanted, and was not included in the original proposal price. Prock stated that the premium fill that was required by the original proposal, under the pavement, was installed and included in the original price. The changes and upgrades, such as the increase of the size of the sewer pipe from 30 to 36 inches, were agreed to in a March 15 proposal, which was initialed and approved by the parties. Several witnesses testified on Northern's behalf and stated that the upgrades were completed and the premium fill was installed beyond the scope of the original proposal.

{¶ 34} Prock further testified that he had been unaware that Bradley was not going to pay the additional invoice until a few months before this action was commenced. Prock had always been under the impression that Bradley was going to pay the entire additional invoice and believed that the $8,000 Bradley paid was a partial payment of the total amount owed.

{¶ 35} Arbitration awards are presumed valid, and an appellate court may not substitute its interpretation of a contract for that of an arbitrator chosen by the parties. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186. An appellate court is limited to ascertaining whether fraud, corruption, misconduct, arbitration impropriety, or evident mistake made the award unjust or unconscionable. Where the parties have agreed to submit their disputes to binding arbitration, they have bargained for the arbitrator's determination concerning the issue submitted and agree to accept the result regardless of its legal or factual accuracy. *Marra Constructors, Inc. v. Cleveland Metroparks Sys.* (1993), 82 Ohio App.3d 557, 612 N.E.2d 806.

{¶ 36} It is undisputed that the arbitration award was not procured by corruption, fraud, or undue means and that there is no evident partiality or corruption on the part of the arbitrator. We decline to allow the appellant to relitigate the facts that were submitted to the arbitrator. We also refuse to substitute our interpretation of the contract in place of the arbitrator's.

{¶ 37} Bradley was afforded a proper arbitration hearing, at which volumes of exhibits were presented and 17 witnesses testified. Nothing in the record indicates that the arbitrator exceeded his powers or committed a material mistake in interpreting the contract. The contract does not contain a parol evidence clause; therefore, the arbitrator could have found that an oral contract was formed between Bradley and Northern regarding the additional upgrades and changes not contemplated in the original proposal. Northern did bill Bradley separately for this additional work, and the engineering plans were changed after the original contract was signed. The arbitrator was in the best position to assess the credibility of the witnesses.

{¶ 38} After reviewing the record, we cannot say that the trial court erred by confirming the arbitrator's award, since the arbitrator's award draws its essence from the parties' agreements, and a rational nexus exists between the agreement and the award. We find that the award is not arbitrary, capricious, or unconscionable and that it does not unjustly enrich either party. The appellant's third, fourth, fifth, sixth, and seventh assignments of error are overruled.

### Assignment of Error VIII

{¶ 39} In its final assignment of error, Bradley claims that the trial court's failure to vacate the arbitration award despite gross improprieties in the

arbitrator's decision constitutes a denial of due process, i.e., access to the court system, violating its rights under the Ohio Constitution.

{¶ 40} The contract was created by Bradley and contained the provision mandating binding arbitration in case of disputes. Bradley was afforded a full arbitration hearing lasting two days and had the opportunity to present volumes of evidence and many witnesses in its defense. Bradley has failed to produce sufficient evidence under R.C. 2711.10 that would cause the trial court to vacate the arbitrator's award. Bradley cannot raise a constitutional challenge simply because it disagrees with the arbitrator's decision. If the parties could challenge an arbitration decision on the ground that the arbitrators erroneously decided legal or factual issues, no arbitration would be binding. *Ungar v. Ormsbee*, Stark App. No. 2001CA00210, 2002-Ohio-741.

{¶ 41} The appellant's eighth assignment of error is overruled.

Judgment affirmed.

JAMES J. SWEENEY and MICHAEL J. CORRIGAN, JJ., concur.

### APPENDIX

Appellant's assignments of error.

{¶ 42} (1) The trial court erred when it failed to grant the appellants' motion to vacate and to deny the Motion to Confirm the Award since the Arbitrator has failed to comply with the submission for the arbitration of Award and has failed to issue a reasoned award with findings of fact and conclusions of law prejudicing the rights of the appellants § 2711.10(C), and imperfectly executed his powers § 2711.10(D); *Rhodes v. Baird* (1866) 16 OS 573 [1866 WL 22], *McKinney v. All State Insurance* (1966) 6 O App. 2nd 136 [35 O.O.2d 270, 216 N.E.2d 887].

{¶ 43} (2) The trial court erred when it failed to grant Appellants' Motion to Vacate and to deny the Motion to Confirm the Award since the Arbitrator failed to comply with the submission for the arbitration of Award and failed to address and resolve the issues and claims presented prejudicing the rights of the Appellants § 2711.10(C), and imperfectly executed his powers § 2711.11(D), *Rhodes v. Baird* (1866) 16 OS 573.

{¶ 44} (3) The trial court erred when it failed to grant the Appellants' Motion to Vacate and to deny the Motion to Confirm the Award since the Award conflicts with the express terms of the contract that premium fills are included and a part of the contract specifications and the Contractor is not entitled to any additional payment for said work, and the Award can not be rationally derived from the express terms of the Contract and the Arbitrator's departure from the essence of the contract regarding contract specifications prejudiced the rights of the Appellants § 2711.10(C), and imperfectly executed his powers § 2711.10(D); *Ohio*

*Office of Collective Bargaining v. Ohio Civil Service Employees Assn. Local 11, AFSCME* (1991) 59 OS 3rd 177 [572 N.E.2d 71].

{¶ 45} (4) The trial court erred when it failed to grant the Appellants' Motion to Vacate and to deny the Motion to Confirm the Award since the Award conflicts with the express terms of the Contract that all contract change orders must be in writing and agreed to by the parties, and the Award can not be rationally derived from the express terms of the Contract, and the Arbitrator's departure from the essence of the contract regarding contract change orders prejudiced the rights of the Appellants § 2711.10(C), and imperfectly executed his powers § 2711.10(D); *Ohio Office of Collective Bargaining v. Ohio Civil Service Employees Assn. Local 11, AFSCME* (1991) 59 OS 3rd 177 [572 N.E.2d 71].

{¶ 46} (5) The trial court erred when it failed to grant the Appellants' Motion to Vacate and to deny the Motion to Confirm the Award since the Award conflicts with clearly and well established legal principles that no quantum meruit recovery can be obtained absent an agreed to written change order from the written contract mandating that all contract change orders must be in writing and agreed to by the parties, and the Arbitrator's manifest disregard of the clearly and well established legal principles regarding quantum meruit recovery prejudiced the rights of the Appellants § 2711.10(C), and imperfectly executed his powers § 2711.10(D); *Ashley vs. Henahan* (1897) 56 OS 559 [47 N.E. 573].

{¶ 47} (6) The trial court erred when it failed to grant the Appellants' Motion to Vacate and to deny the Motion to Confirm the Award since the Award conflicts with clearly and well established legal principles that an accord and satisfaction occurs and estoppel applies when a bona fide dispute exists and the contractor fails to object pursuant to the written Contract provision, to the payments on the Contract and accepts and cashes the payments, and the Arbitrator's manifest disregard of the clearly and well established legal principles regarding accord and satisfaction and estoppel prejudiced the rights of the Appellants § 2711.10(C), and imperfectly executed his powers § 2711.10(D).

{¶ 48} (7) The trial court erred when it failed to grant the Appellants' Motion to Vacate and to deny the Motion to Confirm the Award since a 'manifest mistake' has occurred when the Award conflicts with the express terms of the Contract that premium fills are included and a part of the contract specifications, when the Award conflicts with the express terms of the contract that all contact change orders must be in writing and agreed to by the parties, when the Arbitrator's Award manifestly disregards clear and well established legal principles regarding quantum meruit recovery, and when the Arbitrator's Award manifestly disregards clear and well established legal principles that an accord and satisfaction occurs and estoppel applies when a bona fide dispute exists and

the contractor fails to object pursuant to the written Contract provision, to the payments on the Contract and accepts and cashes the payments, prejudicing the rights of the Appellants § 2711.10(C), and are an imperfection execution of the Arbitrator's powers § 2711.10(D).

{¶ 49} (8) The trial court erred when it failed to grant the Appellants' Motion to Vacate and to deny the Motion to Confirm since the Arbitrator's failure to comply with the arbitration submissions, and the "manifest mistakes," have effectively denied the Appellants its constitutional due process rights by the issuance of the Award § 2711.10(C), and the imperfection of the exercise of powers by the Arbitrator, § 2711.10(D).