OPINION
{¶ 1} Plaintiff-appellant, Fraternal Order of Police Capital City Lodge No. 9, appeals from a judgment of the Franklin County Court of Common Pleas denying its motion to vacate an arbitration award and granting the motion of defendant-appellee, the City of Columbus, to confirm the arbitration award. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} As a result of the September 11, 2001 terrorist attacks, a number of officers of the Columbus Police Department were called to active military duty. The police department placed these individuals on military leave, resulting in vacancies. Nine of these individuals were sergeants. The city used "limited appointments," as opposed to "acting assignments," which are also known as "working out of class assignments," to fill the nine vacancies at the rank of sergeant. These limited appointments were finalized on November 30, 2001. In response to these limited appointments, plaintiff filed a grievance pursuant to the collective bargaining agreement then in effect between the parties. The dispute proceeded to an arbitrator for a final and binding resolution pursuant to the agreement. The stipulated issue before the arbitrator was as follows: "Were the limited appointments to the rank of Police Sergeant made on November 30, 2001, in accordance with the Contract? If not, what is the remedy?" The arbitrator determined that the limited appointments to the rank of police sergeant made on November 30, 2001, were in accordance with the contract, and accordingly denied the grievance in its entirety. Following the issuance of the arbitrator's opinion and award, the parties invoked the jurisdiction of the trial court pursuant to R.C. Chapter 2711. On July 22, 2002, plaintiff filed a motion to vacate the arbitration award pursuant to R.C. 2711.10(D) and 2711.13, and on September 3, 2002, defendant filed a motion to confirm the arbitration award pursuant to R.C. 2711.09.
 {¶ 3} Pursuant to R.C. 2711.09, "[a]t any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the court of common pleas for an order confirming the award." The trial court must grant such an order, unless the award is vacated, modified, or corrected as prescribed in R.C. 2711.10 or 2711.11. R.C. 2711.13
provides that "any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award" after the award is issued. Here, plaintiff moved for an order vacating the arbitrator's award under R.C.2711.10(D), on the basis that the arbitrator exceeded her power as granted to her by the terms of the contract. R.C. 2711.10
provides, in part, as follows:
In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
* * *
(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 {¶ 4} On August 16, 2004, the trial court issued its decision as to the parties' pending motions filed pursuant to R.C. Chapter 2711. The trial court granted the application of defendant to confirm the arbitration award and denied plaintiff's motion to vacate the arbitration award. The trial court entered judgment on September 21, 2004, and plaintiff timely appealed.
 {¶ 5} In this appeal, plaintiff has asserted the following single assignment of error:
The Lower Court Misapplied The Standard Of Review For Arbitration Awards And Thus Erred In Denying The FOP's Motion To Vacate Arbitration Award And Granting The City's Motion To Confirm Arbitration Award.
 {¶ 6} Under its assignment of error, plaintiff argues that the trial court erred in denying plaintiff's motion to vacate the arbitration award and granting defendant's motion to confirm the arbitration award.
 {¶ 7} Ohio law favors and encourages arbitration. MahoningCty. Bd. of Mental Retardation Developmental Disabilities v.Mahoning Cty. TMR Edn. Assn. (1986), 22 Ohio St.3d 80, 84. To that end, an arbitration award is generally presumed to be valid.Endicott v. Johrendt (Apr. 30, 1998), Franklin App. No. 97APE08-1122. "The public policy favoring arbitration requires that courts have only limited authority to vacate an arbitrator's award." Assn. of Cleveland Fire Fighters, Local 93 of theInternational Assn. of Fire Fighters v. Cleveland,99 Ohio St.3d 476, 2003-Ohio-4238, at ¶ 13, citing Mahoning Cty. Bd. of MentalRetardation Developmental Disabilities v. Mahoning Cty. TMREdn. Assn., supra, at 84. Therefore, judicial review of an arbitration decision is quite narrow. See Goodyear Tire RubberCo. v. Local Union No. 200 (1975), 42 Ohio St.2d 516, 520. In fact, R.C. 2711.10 limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority. Id.
 {¶ 8} In view of R.C. 2711.10, it has been stated that an error of fact or law by an arbitrator does not provide a basis for vacating an arbitration award. See N. Ohio SewerContractors, Inc. v. Bradley Development Co., Inc.,159 Ohio App.3d 794, 2005-Ohio-1014, at ¶ 14, citing Goodyear, at 522;Victoria's Secret Stores, Inc. v. Epstein Contracting, Inc.
(Mar. 8, 2001), Franklin App. No. 00AP-209, citing Goodyear, at 522. In other words, "[W]hen parties voluntarily agree to submit their dispute to binding arbitration, they agree to accept the result regardless of its legal or factual accuracy." FordHull-Mar Nursing Home, Inc. v. Marr, Knapp, Crawfis Associates,Inc. (2000), 138 Ohio App.3d 174, 179, citing Cleveland v.Fraternal Order of Police, Lodge No. 8 (1991),76 Ohio App.3d 755.
 {¶ 9} In this appeal, plaintiff challenges the arbitrator's award on the basis that she allegedly exceeded her authority. An arbitrator does not exceed her authority so long as the award "draws its essence" from the underlying contract. ThermalVentures II, L.P. v. Thermal Ventures, Inc., Cuyahoga App. No. 85816, 2005-Ohio-3389, at ¶ 13, citing Findlay City School Dist.Bd. of Edn. v. Findlay Edn. Assoc., 49 Ohio St.3d 129, 132. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious or unlawful." Mahoning Cty. Bd. of Mental Retardation andDevelopmental Disabilities v. Mahoning Cty. TMR Educ. Assn.,
supra, paragraph one of syllabus. Stated differently, "[a]n arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." Ohio Office of Collective Bargaining v. OhioCiv. Serv. Employees Assn., Local 11, AFSCME, AFL-CIO (1991),59 Ohio St.3d 177, syllabus. Therefore, although judicial review of an arbitrator's award is quite limited, the award may be vacated if it violates the express terms of the contract or if there is no rational nexus between the arbitrator's award and the contract.
 {¶ 10} For purposes of this case, the pertinent provisions of the collective bargaining agreement are as follows:
ARTICLE 1 — DEFINITIONS
1.1 Definitions
* * *
"Past Practice" means a policy, procedure or practice which has been continuous and which does not have a cost factor to the City and/or monetary benefit to a member.
* * *
ARTICLE 2 — CONTRACT
2.7 Past Benefits and Practices
(A) The City agrees to continue all existing practices and benefits during the term of this Contract. The Chief of Police, with the approval of the Public Safety Director, shall determine all past practices and benefits. If the Lodge disagrees as to whether a past practice or benefit does exist, the Lodge may file a grievance over the matter at Step 4 and take the question through the Grievance Procedure for a final and binding decision by an arbitrator as to whether or not a past practice or benefit exists. * * *
* * *
ARTICLE 7 — MANAGEMENT RIGHTS
7.1 Management Rights
Except to the extent otherwise limited or modified by this Contract, the City retains the right and responsibility, regardless of the frequency of exercise, to operate and manage its affairs in each and every respect. These rights and responsibilities shall include, but are not limited to:
* * *
(F) To hire, examine, promote, transfer, assign and schedule officers in positions with the Division of Police;
* * *
(I) To determine the location, methods, means and sworn personnel by which operations are to be conducted;
(J) To change or eliminate existing methods of operation, equipment, or facilities;
* * *
The exercise of management rights which allegedly violate specific provisions of this Contract are subject to the Grievance Procedure.
* * *
ARTICLE 10 — CORRECTIVE/DISCIPLINARY ACTION AND RECORDS
* * *
10.6 Probationary Period
* * *
(B) There shall be no probationary period for a member promoted to the rank of Sergeant, Lieutenant, or Commander.
* * *
ARTICLE 12 — GRIEVANCE PROCEDURE
* * *
12.5 Grievance Procedure
* * *
(E) Step Five — Arbitration
* * *
(3) Authority of Arbitrator. The arbitrator shall conduct a fair and impartial hearing on the grievance, hearing and recording testimony from both parties and applying generally accepted arbitration rules. The arbitrator shall have no authority to add to, detract from, modify, or otherwise change any of the terms or provisions of this Contract. The decision of the arbitrator shall be final and binding on all parties.
* * *
ARTICLE 15 — PROMOTIONS
15.1 Promotional Criteria
The following criteria shall be used for promotions:
* * *
(C) All promotional vacancies shall be filled from eligibility lists established by fair and objective promotional examinations.
* * *
(F) Promotional eligibility lists shall be for two (2) years from the certification date of the eligibility list.
(G) A new eligibility list will be available as soon as practicable upon the expiration of the old eligibility list.
* * *
15.5 Miscellaneous
It is the position of the parties that the subject of promotions, including the promotional examination process, is subject to the provisions of this Contract, and only to the extent not specified in this Contract, by the City Charter and the Rules of the Civil Service Commission, as such Charter and Rules were in effect on December 31, 1993. * * *
* * *
ARTICLE 21 — PAY PLAN ADMINISTRATION
* * *
21.2 Working Out of Rank Pay
* * *
If a member is required to perform the duties of the next higher rank as a result of a vacancy in that rank, and if he/she continues to perform such duties continuously and is subsequently promoted without interruption (i.e. without first being returned to an assignment in his/her former rank), then the member's seniority date for the new rank shall be the date of his/her out-of-rank assignment which immediately preceded his/her promotion.
 {¶ 11} The provisions of other documents that are pertinent in this case are as follows:
Columbus Police Division Directive 3.73
* * *
III. Policy Statements
A. Working Out of Class/Promotions
1. Acting in command assignments are intended to fill extended vacancies in the higher ranking positions. Unless otherwise approved by the Chief of Police, sworn personnel may be appointed to "act in command" only in the positions of Chief of Police, Deputy Chief, or Commander. Personnel will not act in a position more than one rank higher than their assigned rank unless approved by the Chief of Police. Acting personnel will not wear the insignia of the higher rank with the exception of personnel acting as sergeants for 30 days or more.
* * *
Rules and Regulations of the Municipal Civil Service Commission
VIII. Eligible Lists
* * *
C. Addition by Reinstatement
1. Following separation or reduction in rank without fault (e.g. resignation, retirement, voluntary demotion or termination as a result of a condition of employment). Upon written request, the name of an individual having previously received an original, promotional or noncompetitive appointment to a position, may be placed at the top of an eligible list for the classification from which the employee was separated or reduced in rank if all of the following apply:
a. for individuals who have left City employment, the request is made within one year from the date of separation; or, for current City employees, the request is made for a classification served in as part of his/her current continuous City service;
and
b. the individual was separated from the service or reduced in rank without fault and in good standing.
* * *
D. Processing of Eligible Lists
* * *
3. All eligible lists shall automatically terminate when exhausted or when replaced by a new list.
4. Except as otherwise provided by Commission action, no name shall remain on any eligible list for more than two years, unless pursuant to the retesting provisions of Rule VII(B)(7)(a).
* * *
X. Appointments
* * *
F. Conditions of Employment
1. Limited employment. When it is necessary to fill a vacancy created as a result of granting a leave of absence to a regular employee * * * the appointing authority may make an appointment in accordance with these Rules[.] * * *
a. Alternate incumbents. Upon the return of the regular incumbent to the original position at any time, the services of the limited employee shall be automatically terminated without regard to the procedures contained herein for layoffs * * * or disciplinary removals * * *. In the event the regular employee * * * fails to return to the original position upon expiration of the leave * * * the alternate position shall automatically terminate and the incumbent shall assume the original position with no limited condition and with no change in status provided the incumbent has, as part of his or her continuous City service, held one or more positions in the class for a period or periods of time totaling at least one year. * * *
 {¶ 12} Plaintiff argues that the limited appointments were not permitted under the language of the contract, and thus the arbitrator exceeded her authority in finding otherwise. Specifically, plaintiff contends that the arbitrator's opinion and award conflicts with multiple provisions of the contract.
 {¶ 13} Before addressing plaintiff's specific arguments in this regard, we observe that the arbitrator determined that the provisions in the contract regarding promotions are not all encompassing and that limited appointments are not specifically addressed in the contract — they are neither specifically authorized nor proscribed. The arbitrator noted that Section 15.5 of the contract provides that the subject of promotions are governed by the contract, and "only to the extent not specified in this Contract," by the City Charter and the Rules of the Civil Service Commission. Additionally, the arbitrator determined that Civil Service Commission Rule X(F)(1) authorizes limited appointments. Therefore, the arbitrator concluded that the contract, as supplemented by the Civil Service Commission Rules, authorized limited appointments.
 {¶ 14} Plaintiff argues that Rule X(F)(1) permits limited appointments "only `when necessary to fill a vacancy . . .'" (Plaintiff's merit brief, at 11.) According to plaintiff, the parties had no reason to address limited appointments in the contract because there was a viable alternative to filling extended vacancies, i.e. "working out of class assignments." Plaintiff essentially reasons that limited appointments were not "necessary" because a viable alternative for filling the vacancies existed, and, therefore, their use was prohibited.
 {¶ 15} Upon our review of the contract and the arbitrator's opinion and award, we find that the arbitrator's conclusion that the use of limited appointments was authorized by Rule X(F)(1), draws its essence from the contract, as supplemented by the Rules of the Civil Service Commission. Plaintiff is correct that Rule X(F)(1) provides that limited appointments are authorized "when necessary to fill a vacancy." However, even though plaintiff's interpretation of that provision is arguably reasonable, it is not the only reasonable interpretation. It would also be reasonable to interpret the provision as not restricting the use of limited appointments to circumstances when no other viable alternative exists to filling the vacancies. Specifically, the use of "necessary" arguably was included in order to simply distinguish between circumstances when it would be necessary to fill a vacancy versus when it would be unnecessary to fill a vacancy. Thus, plaintiff's argument pertaining to Rule X(F)(1) is unpersuasive.
 {¶ 16} Plaintiff contends that the limited appointments violated the contract because they were made from an expired eligibility list. Section 15.1(C) of the contract requires that "[a]ll promotional vacancies shall be filled from eligible lists established by fair and objective examinations." The contract further provides, under Section 15.1(F), that "[p]romotional eligibility lists shall be for two (2) years from the certification date of the eligibility list." In this case, the vacancies were filled with individuals whose names were on the promotional eligibility list that was effective November 30, 1999. Pursuant to the terms of the contract, that eligibility list expired on November 29, 2001.
 {¶ 17} As to this issue, the arbitrator determined that the limited appointments did not violate Section 15.1(C) or (F) of the contract. The arbitrator found that, pursuant to a request made on November 21, 2001, the Civil Service Commission certified 15 names from the November 30, 1999 eligibility list on November 27, 2001. In addition, the arbitrator found that the nine appointments were ultimately "effective" on November 30, 2001, the day after the expiration of the eligibility list from which the individuals were selected.
 {¶ 18} The arbitrator observed that although the eligibility list from which the officers were promoted expired before the appointments were made, that list remained valid when the Civil Service Commission provided the certified list of 15 names on November 27, 2001. She reasoned that to require the appointments to be finalized during the term of the list from which they are made would effectively reduce the life of the eligibility list and thus would be contrary to the parties' clear intent that the eligibility list be effective for two years. When vacancies arise near the end of the term, such an interpretation would either force hasty decision-making or delay appointments to ensure that the vacancies were filled from the new eligibility list.
 {¶ 19} The trial court recognized that the arbitrator had found the timing of the certification as the crucial factor in determining whether the appointments complied with Section 15.1 of the contract. The trial court essentially observed that a rational nexus existed between the arbitrator's award and the agreement. We concur with the trial court and find that the arbitrator supported her conclusion with reasoning that derives its essence from the contract. Furthermore, the fact that this court may disagree with the conclusion of the arbitrator does not necessitate the vacation of the award. We are constrained by R.C. Chapter 2711 in our judicial review of the arbitrator's award. Therefore, we conclude that the arbitrator did not exceed her lawful authority in determining that the limited appointments complied with Section 15.1 of the contract.
 {¶ 20} Additionally, plaintiff argues that limited appointments violate Section 10.6(B) of the contract because they are not permanent. Section 10.6(B) of the contract provides that "[t]here shall be no probationary period for a member promoted to the rank of Sergeant[.]" Plaintiff asserts that any promotion to the rank of sergeant must be permanent, and a limited appointment is not permanent. Therefore, according to plaintiff, the limited appointments were in violation of the contract.
 {¶ 21} The arbitrator recognized that the limited appointments were limited in duration. However, she also observed that they were "permanent in the sense that the appointees automatically have tenure for the duration of their limited appointment and cannot be probationarily removed from the position." (Arbitrator's Opinion, at 12.) In other words, the appointees were given permanent status for a limited duration. Based on her analysis, the arbitrator resolved that limited appointments did not violate Section 10.6(B) of the contract.
 {¶ 22} Although we may not have reached the same conclusion as the arbitrator, we find that her analysis on this issue was rational and derived its essence from the contract. We further find that the arbitrator's conclusion as to this issue was not in conflict with the express terms of the agreement. Thus, plaintiff's argument regarding Section 10.6(B) of the contract is unpersuasive.
 {¶ 23} Lastly, plaintiff contends that defendant's use of limited appointments violated the past practice of filling extended vacancies with acting appointments. In Assn. ofCleveland Fire Fighters, supra, the Supreme Court of Ohio adopted a test for determining whether a past practice is binding on parties: "The past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties." Id. at syllabus.
 {¶ 24} In the case at bar, the parties addressed the issue of past practices in the contract. Section 1.1 of the contract defines "past practice" as "a policy, procedure or practice which has been continuous and which does not have a cost factor to the City and/or monetary benefit to a member." Section 2.7 of the contract provides that defendant is obligated "to continue all existing practices and benefits during the term of this Contract." That section also provides that the Chief of Police, with the approval of the Public Safety Director, determines past practices. It further provides that plaintiff may file a grievance if it disagrees with a past practice determination, and that the dispute proceeds to an arbitrator for resolution.
 {¶ 25} Here, the past practice dispute was properly before the arbitrator pursuant to the provisions of Section 2.7. As noted by plaintiff, Section 2.7 of the contract provides that if plaintiff disagrees with the Chief as to whether something constitutes a past practice, plaintiff may grieve the matter "for a final and binding decision by an arbitrator as to whether or not a past practice or benefit exists."
 {¶ 26} In this appeal, plaintiff maintains that the arbitrator failed to make an independent determination of whether working out of class assignments constituted a past practice, as defined in the contract, and, therefore, her award violated the express provisions of the contract and is arbitrary. This argument lacks merit. Upon our review of the arbitrator's opinion, we find that the arbitrator analyzed and resolved the issue of whether the use of acting assignments to cover extended vacancies constituted a binding past practice. In her opinion, the arbitrator clearly determined that the use of acting assignments did not constitute a binding past practice.
 {¶ 27} Additionally, we find that the arbitrator's opinion in this regard was rational and derived its essence from the agreement. In making her determination, the arbitrator recognized that the contract and directive permit the use of acting assignments, and that acting assignments had been used in the past to cover police sergeant positions. The arbitrator determined that whether this practice was binding depended on the agreement of the parties, which could be tacit, and "not on its fixed and established use over a reasonable period of time." (Arbitrator's Opinion, at 13.) The arbitrator also noted that the "nature of the alleged past practice" should be considered in this analysis. Id. In this regard, the arbitrator observed that "[a]t the heart of this case is an inherent management right over the filling of vacancies." (Id. at 13-14.) The arbitrator resolved that "[b]arring strong evidence of agreement always to use acting assignments, their use over an extended period of time merely constitutes a `present way,' not the exclusive way of covering these absences." (Id. at 14; emphasis sic.)
 {¶ 28} Thus, the arbitrator considered the previous use of acting assignments to fill extended vacancies at the sergeant position, as well as the management rights of defendant, which are outlined in the agreement. She resolved that defendant was not bound by a past practice in making the appointments, even though acting assignments had been used to cover extended vacancies in the past, including vacancies in the rank of police sergeant created during the Desert Storm military conflict. Upon our review of the agreement, including the provisions of the contract addressing past practices and the management rights of plaintiff, we find that determination to be reasonable and not in conflict with the express terms of the contract. Thus, we find that the arbitrator's resolution of the past practice issue derives its essence from the contract. Therefore, we conclude that the arbitrator did not exceed her authority in making said finding.
 {¶ 29} Based on the foregoing, we conclude that the trial court did not err in denying plaintiff's motion to vacate the arbitration award and granting defendant's motion to confirm the arbitration award. Therefore, we overrule plaintiff's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt, P.J., and Bryant, J., concur.